

The comments of the Associated Press will be part of the court's considerations.

SO ORDERED.

/s/ Alvin K. Hellerstein
March 1, 2022

**ASSOCIATED PRESS**

200 Liberty Street
New York, New York 10128
T 212.621.7547

www.ap.org

Feb. 25, 2022

VIA EMAIL TO CHAMBERS

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York

Re:   United States v. Cliver Alcala Cordones, 11 Cr 205 (AKH)

Dear Judge Hellerstein,

I am writing as a reporter for The Associated Press to request the Court take into account the public's interest in this case as it considers the government's request for a broad protective order pursuant to Section 4 of the Classified Information Procedures Act (Dkt No 76).

The prosecution of Defendant Cliver Alcala Cordones is of significant public interest due to its implications on U.S. foreign policy toward Venezuela.  The case is one of the most prominent to date brought by U.S. prosecutors. It involves a defendant, Cordones, who is charged alongside none other than Venezuelan President Nicolas Maduro in a wide-ranging conspiracy to "flood" the U.S. with cocaine and use the narcotics trade as a "weapon against America" (Dkt No 11).

In addition, Cordones has asserted as part of his pre-trial defense that, far from a co-conspirator of Maduro, he spent the seven years prior to his arrest actively seeking to oust the Venezuelan leader with the full knowledge of U.S. officials at the highest levels of the CIA and other federal agencies (Dkt No 71, Exhibit A). This stunning accusation raises fresh questions about what the Trump administration knew about a failed clandestine plot against Maduro involving Cordones and former U.S. combat veterans that the AP and other media outlets have documented extensively.

The government is seeking to block the release of certain unspecified classified materials, even to attorneys for the Defendant. It invokes the state secrets privilege to argue that making public these materials could cause "serious damage to the national security." While the AP is in no position to challenge the specifics of that claim, we do believe the court should take a skeptical approach to this request and that any protective order should be limited in scope to seal materials only to the extent required by law. The burden should also be on the government to explain, in detail, not with sweeping assertions, why such disclosures would prove so damaging.

The First Amendment and common law provide the public with rights of access to criminal trial proceedings and records. *See, e.g., Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 571 (1980) (public right of access to criminal trials); *Press-Enterprise Co.* v. *Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501, 505–08 (1984) (voir dire).

The right is premised on "the common understanding that 'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'"  *Globe Newspaper Co.* v. *Superior Court*, 457

1

U.S. 596, 604 (1982) (citation omitted). "Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I*, 464 U.S. at 508.

Under the First Amendment, "judicial documents" may not be sealed "unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co.* v. *Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 13–14 (1986); *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

The common law also provides a qualified right of public access to inspect and copy judicial records in a criminal trial. *Nixon* v. *Warner Commc'ns*, 435 U.S. 589, 597–98 (1978). The right is based on the need for federal courts "to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal citation omitted). Courts apply a three-step analysis: (i) whether the document is a "judicial document"—*i.e.*, whether it is "relevant to the performance of the judicial function and useful in the judicial process"; (ii) the weight of the presumption to be applied; and (iii) a balancing of competing interests against the presumption of access. *Id.* at 119–20.

Nothing in the public record indicates the government has met this demanding threshold. Furthermore, even if broad sealing authority is warranted, it is difficult to imagine it would be effective, as the Defendant has already indicated that he intends to shine a light on the U.S. government's knowledge of armed, clandestine activities he helped lead to remove Maduro. In his request for discovery, Cordones has solicited the government provide any and all documents regarding communications between Maduro's opponents and top White House officials, former Secretary of State Mike Pompeo and former Attorney General William Barr. Such materials, the defense claims, are essential in supporting its argument that Cordones was actively seeking to overthrow Maduro at the same time the two were alleged to have been members together of the same drug conspiracy.

The public has a keen interest in monitoring and better understanding how its government is pursuing its stated foreign policy goal of removing Maduro, including any support for, or knowledge of, covert activity. To the extent the Court determines that sealing of certain records is appropriate, we request that any such order be narrowly tailored to protect true national security needs and that the Court issue a written order articulating its findings.

Thank you for your consideration of this matter.

Sincerely,

Joshua Goodman
Latin America correspondent
jgoodman@ap.org
786-643-1883