

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 11, 2022

**BY ECF**
Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    **Re:**    ***United States v. Cliver Antonio Alcala Cordones*, S2 11 Cr. 205 (AKH)**

Dear Judge Hellerstein:

       On May 11, 2022, the defendant in the above-reference matter filed a motion under seal. On June 15, 2022, the Government opposed that motion, also under seal. Pursuant to an agreement between the parties, the Government attaches redacted versions of the relevant memoranda of law for the public docket.

       Respectfully submitted,

       DAMIAN WILLIAMS
       United States Attorney

By:       _____/s/_____
       Kaylan E. Lasky
       Kyle A. Wirshba
       Assistant United States Attorneys
       (212) 637-2315/2493

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

United States of America,

- v. -

Nicolás Maduro Moros,
Diosdado Cabello Rondón,
Huge Armando Carvajal Barrios,
    a/k/a/ "El Pollo,"
Cliver Antonio Alcalá Cordones,
Luciano Marín Arango,
    a/k/a "Ivan Marquez," and
Seuxis Paucis Hernández Solarte,
    a/k/a "Jesús Santrich,"

              Defendants.

S2 11 CR. 205 (AKH)

## *TO BE FILED UNDER SEAL*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CLIVER ALCALÁ CORDONES' RENEWED MOTION FOR THE PRODUCTION OF MATERIAL PURSUANT TO *BRADY v. MARYLAND* AND FEDERAL RULE OF CRIMINAL PROCEDURE 5(F)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT FACTS ........................................................................................................... 1

THE GOVERNMENT MUST DISCLOSE INFORMATION REGARDING GENERAL
ALCALÁ CORDONES' UNEQUIVOCAL WITHDRAWAL FROM THE
CONSPIRACY ..................................................................................................................... 5

SPECIFIC DEMANDS......................................................................................................... 7

CONCLUSION...................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963) ................................................................................ *passim*.

*Kyles v. Whitley*,
    514 U.S. 419 (1995) ................................................................................ 5

*Smith v. United States*,
    568 U.S. 106 (2013) ................................................................................ 6

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010) ................................................................... 5

*United States v. Bagley*,
    473 U.S. 667 (1985) ................................................................................ 5

*United States v. Coppa*,
    267 F.3d 132 (2d Cir. 2001) ................................................................... 5

*United States v. Eppolito*,
    543 F.3d 25 (2d Cir. 2008) ..................................................................... 6

*United States v. Sadiki Komunyaka*,
    658 F.3d 140 (2d Cir. 2011) ................................................................... 6

*United States v. Stewart*,
    590 F.3d 93 (2d Cir. 2009) ..................................................................... 5

**Statutes**

Federal Rule of Criminal Procedure 5(f) .............................................. *passim*.

18 U.S.C. § 3282(a) ............................................................................... 6

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Criminal Procedure 5(f) and *Brady v. Maryland*, 373 U.S. 83 (1963), the Court should order the government to produce all material demonstrating General Alcalá Cordones' hostility toward and armed rebellion against Maduro and his other alleged co-conspirators.  This material will show that even if the government can prove that he was a member of the charged conspiracy while a general in the Venezuelan Army, General Alcalá Cordones unequivocally and publicly effectuated his withdrawal from the charged conspiracy by 2014, more than five years before he was charged in this matter.  Evidence supporting withdrawal from a charged conspiracy outside of the applicable statutes of limitations, constitutes a complete defense from the charges.  Such evidence is unquestionably exculpatory and the government is obligated to produce it to the defense.  Despite repeated requests, the government has failed to disclose the information at issue.  Accordingly, it is respectfully requested that the Court order the government to comply with its obligations under Rule 5(f) / *Brady.*

## RELEVANT FACTS

The original indictment in this matter was filed in 2011 and charged only defendant Hugo Carvajal with participating in a narcotics conspiracy.  At that time, General Alcalá Cordones was a general in the Venezuelan army serving under command of the civilian government of President Hugo Chávez.  In March 2013, President Chávez died and Nicolás Maduro assumed power as the new President of Venezuela.  In July 2013, General Alcalá Cordones retired from the army after thirty years of service.  He almost immediately publicly announced his antipathy and opposition to the Maduro regime.  By 2014, General Alcalá Cordones had joined a civil society that was directly and openly opposed to Maduro, and had become a vocal critic of the

Maduro regime both in the news and on social media. By 2017, General Alcalá Cordones engaged in his first effort to overthrow the Maduro regime *via* armed insurrection. From 2017-2020, General Alcalá Cordones repeatedly met with officers from the United States Central Intelligence Agency ("CIA") as well as Colombian intelligence officers, and regularly discussed the planned revolt with them.

A superseding indictment was filed in 2019, again charging only Carvajal with participation in the alleged conspiracy. By 2020, General Alcalá Cordones was again involved in a plot to overthrow Maduro by armed conflict, this time with the support of the Venezuelan opposition. On March 5, 2020, days before the armed assault was set to begin, the government filed a second superseding indictment, this time charging General Alcalá Cordones with participating in a narco-terrorism drug trafficking conspiracy and related offenses. While the second Superseding Indictment added new defendants (including General Alcalá Cordones), it failed to add any new information or new overt acts.

The Second Superseding Indictment alleged a narco-terrorism conspiracy spanning more than 20 years and accused General Alcalá Cordones and his co-defendants of acting as the "leaders" and "managers" of the *Cartel de Los Soles* at various but undefined times throughout that 20-plus year period. *See* Indictment at ¶ 6. General Alcalá Cordones is alleged to have joined the conspiracy in 2008 while he was still a general in the Venezuelan Army. *Id.* at ¶ 15(g). Although the Indictment describes a 21-year narco-terrorism conspiracy, General Alcalá Cordones is mentioned with specificity only once:

> In or about 2008, CABELLO RONDÓN, CARVAJAL BARRIOS, and CLÍVER ANTONIO ALCALÁ CORDONES, the defendant, held a meeting at which they agreed that ALCALA CORDONES would take on additional duties coordinating drug-trafficking activities by the *Cártel de Los Soles* and the FARC.

*Id.* at ¶ 15(g).

2

The United States government has been fully aware of General Alcalá Cordones' opposition to Maduro since at least July 2014.  The government is in possession of exculpatory information, described in detail below, concerning General Alcalá Cordones' efforts to oust his alleged co-conspirators from power, which it has failed to produce to the defense.  This information supports General Alcala Cordones' affirmative defense of withdrawal, it is exculpatory and must be disclosed to the defense.

On October 30, 2020, the Court entered an order pursuant to Federal Rule of Criminal Procedure 5(f) confirming the government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and summarizing the possible consequence of violating those obligations.  *See* ECF No. 40.  To date, the government has made limited *Brady* disclosures to the defense that only relate to an investigation from the Middle District of Florida regarding the 2020 armed opposition to Maduro (the "Florida Investigation").  The produced materials were primarily law enforcement materials relating to the alleged trafficking of arms to the Venezuelan rebel forces; there is no information relating to the earlier coup attempts, nor is there any information from the various governmental agencies that have been involved with General Alcalá Cordones and have knowledge of his activities in Venezuela from 2016-2020.

On November 22, 2021, General Alcalá Cordones made a specific and detailed demand to the government for Federal Rule of Criminal Procedure 5(f) / *Brady* material regarding witnesses and members of the United States government that were aware of General Alcalá Cordones' involvement in two *coup* attempts (and his planning of a third) against the government of his alleged co-defendant, Maduro.  *See* ECF No. 71 at Exhibit A.  No such information has been disclosed to the defense.

On January 28, 2022, General Alcalá Cordones filed pretrial motions including a motion seeking the production of *Brady* material from the government (the "First *Brady* Motion"). *See* ECF Nos. 70, 71. In the First *Brady* Motion, the defense sought materials evidencing General Alcalá Cordones' hostility toward and armed rebellion against Maduro and his other alleged co-conspirators that would support a defense of withdrawal from the charged conspiracy.

On March 17, 2022, the Court denied the First *Brady* Motion on the basis that no order was necessary at that time because "[t]he government appears to be in compliance with its obligations under Rule 16, *Brady*, and *Giglio*." ECF No. 89 at 22.

On March 29, 2022, the defense met with the Court, *ex parte*, in connection with the government's pending application for a protective order pursuant to Section 4 of the Classified Information Procedures Act. As a result of the issues discussed at that conference, the defense submits this renewed Rule 5(f) / *Brady* motion for the disclosure of materials in the United States government's possession that would support the conclusion that, even if he was a member of the charged conspiracy, General Alcalá Cordones' withdrew as a result of his open opposition to the Maduro government, clearly communicating his break from membership in the conspiracy.

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

## THE GOVERNMENT MUST DISCLOSE INFORMATION REGARDING GENERAL ALCALÁ CORDONES' UNEQUIVOCAL WITHDRAWAL FROM THE CONSPIRACY

To the extent that the government is able to prove the existence of the alleged conspiracy and General Alcalá Cordones' participation in it, the defense intends to prove that General Alcalá Cordones' anti-Maduro activities going back to at least 2014 demonstrates his withdrawal from the conspiracy.

The government has a duty to disclose material evidence favorable to a defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Federal Rule of Criminal Procedure 5(f).  The Second Circuit articulated the *Brady* rule in *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) as "a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment."  "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."  *Id*. The focus is on whether the exculpatory and impeachment evidence, if suppressed, "would deprive the defendant of a fair trial."  *Id.* at 135 (quoting *United States v. Bagley*, 473 U.S. 667 (1985)).

Even if the materials are classified, they are still subject to discovery if helpful to the defense.  *See e.g. United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) ("the state-secrets privilege must—under some circumstances—'give way . . . to a criminal defendant's right to present a criminal defendant's right to present a meaningful defense.'" (quoting *United States v. Stewart*, 590 F.3d 93, 131 (2d Cir. 2009)).

To demonstrate withdrawal from a conspiracy, a defendant must prove beyond a reasonable doubt that he "performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the

authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *United States v. Sadiki Komunyaka*, 658 F.3d 140, 143 (2d Cir. 2011) (quoting *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008)).

Withdrawal from a conspiracy outside of the applicable statute of limitations is a complete defense. *Smith v. United States*, 568 U.S. 106, 111 (2013). Accordingly, any evidence relating to a defendant's withdrawal from a charged conspiracy outside of the applicable statute of limitations is unquestionably favorable to a defendant and, thus, something that the government is required to disclose pursuant to Rule 5(f) / *Brady*.

In this case, evidence demonstrating General Alcalá Cordones' hostility toward and armed rebellion against Maduro and his other alleged co-conspirators must be produced to the defense pursuant to Rule 5(f) / *Brady*. Such evidence supports a defense of withdrawal from the charged conspiracy. The specific requested information, detailed below, will demonstrate that General Alcalá Cordones' unequivocally and publicly effectuated his withdrawal from the charged conspiracy by 2014.

The statute of limitations for the conspiracy charges against General Alcalá Cordones' is five years. *See* 18 U.S.C. § 3282(a). General Alcalá Cordones' was charged in 2020, more than five years after he withdrew from the charged conspiracy. Accordingly, because evidence of his withdrawal provides General Alcalá Cordones with a "complete defense" to the charges against him, it is exculpatory and must be produced to the defense.

We believe that the following information is in the possession of the United States government and is relevant to General Alcalá Cordones' withdrawal defense. Because no such material has been disclosed by the government despite repeated requests by the defense, we request that the Court order the government to search for and provide the indicated materials to

the defense in their complete and unredacted form.  To the extent the government has not

undertaken a search for any of the demanded information, we further request that the Court order

the government to do so.

### SPECIFIC DEMANDS

To assist the government in meetings its *Brady* obligations, we provide the following detailed

information and parameters regarding the existence of evidence necessary to General Alcalá

Cordones' defense:



4. Any and all documents, including but not limited to reports, communications, notes,
   receipts, and memoranda, regarding the following meetings and events. (Dates are
   approximate and are provided to assist a search for responsive materials. To the
   extent any meetings took place on different dates we nonetheless seek responsive
   materials):

   a. November 13, 2013: Meeting between General Alcalá Cordones and DEA Agent
      Slade Searight in Madrid;

   b. July 23, 2014: Meeting between General Alcalá Cordones, AUSA Michael
      Lockard and DEA Agents Sandalio Gonzalez and Gregg Mervis in Bogotá,
      Colombia;



## CONCLUSION

This Court, pursuant to Federal Rule of Criminal Procedure 5(f), should order the

government to produce the demanded information to the defense.


Dated: May 11, 2022

_____/s/_____

César de Castro
Valerie Gotlib
**The Law Firm of César de Castro P.C.**
111 Fulton Street – 602
New York, NY 10038
(631)-460-3951
cdecastro@cdecastrolaw.com
vgotlib@cdecastrolaw.com


Adam S. Kaufmann
Cristián Francos
Diane M. Camacho
**Lewis Baach Kaufmann Middlemiss PLLC**
The Chrysler Building
405 Lexington Avenue, 64th Floor
New York, NY 10174
(212) 826-7001
Adam.Kaufmann@lbkmlaw.com
Cristian.Francos@lbkmlaw.com
Diane.Camacho@lbkmlaw.com

*Attorneys for Defendant,*
*Cliver Antonio Alcalá Cordones*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CLIVER ANTONIO ALCALÁ CORDONES,

Defendant.

S2 11 Cr. 205 (AKH)

**TO BE FILED UNDER SEAL**

**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR THE PRODUCTION OF MATERIAL PURSUANT TO *BRADY v. MARYLAND*, 373 U.S. 83 (1963), AND FEDERAL RULE OF CRIMINAL PROCEDURE 5(F)**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Jason A. Richman
Kyle A. Wirshba
Kaylan E. Lasky
Assistant United States Attorneys
    *Of Counsel*

# **TABLE OF CONTENTS**

BACKGROUND ................................................................................................................... 2

   I. Relevant Case Background ........................................................................................ 2

   II. The Government's Discovery Productions ............................................................. 3

   III. Pretrial and CIPA Motions ................................................................................... 6

   IV. The Defendant's Motion to Compel ..................................................................... 7

DISCUSSION ..................................................................................................................... 8

   I. Applicable Law ......................................................................................................... 8

     A. Government's Disclosure Obligations ............................................................... 8

     B. Applicable Statutes of Limitations .................................................................. 11

   II. Argument ............................................................................................................... 12

     A. The Defendant Misidentifies the Applicable Statutes of Limitations ............ 12

     B. The Defendant's Motion to Compel Additional Discovery Is Without Merit ................ 12

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Giglio v. United States*,
    405 U.S. 150 (1972) ......................................................................................... 1

*Kyles v. Whitley*,
    514 U.S. 419 (1995) ......................................................................................... 9

*United States v. Avellino*,
    136 F.3d 249 (2d Cir. 1998) ......................................................................... 8, 9

*United States v. Barcelo*,
    628 F. App'x 36 (2d Cir. 2015) ................................................................. 10, 13

*United States v. Blaszczak*,
    308 F. Supp. 3d 736 (S.D.N.Y. 2018) ............................................................. 9

*United States v. Collins*,
    409 F. Supp. 3d 228 (S.D.N.Y. 2019) ......................................................... 9, 10

*United States v. Ghailani*,
    687 F. Supp. 2d 365 (S.D.N.Y. 2010) ........................................................... 10

*United States v. Locascio*,
    6 F.3d 924–49 (2d Cir. 1993) ....................................................................... 9, 10

*United States v. Middendorf*,
    No. 18-CR-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) ............ 10, 13

*United States v. Quinn*,
    445 F.2d 940 (2d Cir. 1971) ............................................................................ 9

*United States v. Stein*,
    424 F. Supp. 2d 720 (S.D.N.Y. 2006) ........................................................... 10

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006) ......................................................................... 10

**Statutes**

18 U.S.C. § 2332b ................................................................................................ 11

18 U.S.C. § 3282 .................................................................................................. 11

18 U.S.C. § 3286 ............................................................................................. 11-12

18 U.S.C. § 924 .......................................................................................... 2, 3, 11

18 U.S.C. § 951 .................................................................................................... 11

21 U.S.C. § 960a .............................................................................................. 2, 11

21 U.S.C. § 963 ..................................................................................................... 2

**Rules**

Federal Rule of Criminal Procedure 16 ........................................................... *passim*

The Government respectfully submits this memorandum in opposition to the motion (the "Motion") of Cliver Antonio Alcalá Cordones (the "defendant") to produce all material (the "Requested Material") demonstrating the defendant's alleged hostility toward Nicolás Maduro Moros ("Maduro") and the defendant's other co-conspirators. In his Motion, the defendant argues that the Requested Material will demonstrate that the defendant withdrew from the charged conspiracy more than five years before he was charged in the above-captioned case, and that his withdrawal is a complete defense. (Mot. at 1).

The defendant is wrong. First, the narco-terrorism conspiracy charged in Count One of the Indictment has at least an eight-year, not a five-year, statute of limitations. Accordingly, even if the defendant had withdrawn from the conspiracy in 2014, as the defendant argues, he would still be guilty of the narco-terrorism conspiracy. In any event, as detailed below, the Government has fulfilled, and indeed surpassed, its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure, as well as *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. These productions included, for example, materials for several different charged cases, an ongoing investigation by the U.S. Attorney's Office for the Southern District of Florida, and each of the defendant's meetings with DEA agents and SDNY prosecutors. The Requested Materials, however, are neither in the possession of the prosecution team nor any agency with which an investigation was conducted jointly, and accordingly the defendant's Motion should be denied.

**BACKGROUND**

**I.  Relevant Case Background[1]**

On March 5, 2020, a grand jury in this District returned the operative indictment, S2 11 Cr. 205 (AKH) (the "Indictment"), which charges the defendant—as well as Maduro; Diosdado Cabello Rondón ("Cabello"); Hugo Armando Carvajal Barrios, a/k/a "Ell Pollo" ("Carvajal"); Luciano Marín Arango, a/k/a "Ivan Marquez" ("Marín"); and Seuxis Paucis Hernández Solarte ("Hernández") (collectively, the "defendants")—with the following crimes: (1) narco-terrorism conspiracy, in violation of Title 21, United States Code, Section 960a; (2) cocaine-importation conspiracy, in violation of Title 21, United States Code, Section 963; (3) possession of machineguns and destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and 2; and (4) conspiracy to possess machineguns and destructive devices, in violation of Title 18, United States Code, Section 924(o). (Dkt. 11).

The charges in the Indictment stem from the defendants' participation in a conspiracy, from 1999 until 2020, involving the *Cártel de Los Soles*, or "Cartel of the Suns" (the "Cartel") and the *Fuerzas Armadas Revolucionarias de Colombia* (the "FARC"). The Cartel is a Venezuelan drug-trafficking organization comprised of high-ranking Venezuelan officials who facilitated the importation of tons of cocaine into the United States. The FARC, which was designated as a Foreign Terrorist Organization in 1997,[2] was a massive cocaine producer and also directed violent

---

[1]  A more detailed recitation of the factual background is set forth in the Government's Opposition to the Defendant's Pretrial Motions. (Dkt. 79 at 2–6).

[2]  The FARC was delisted on November 30, 2021. *See* State Department, Press Statement, Nov. 30, 2021, *available at* https://www.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-designations/ (last visited Feb. 10, 2022). Simultaneous to that delisting, the State Department

acts against U.S. persons and property in foreign jurisdictions, including in Colombia. (*Id.* ¶¶ 1–3, 11).

As set forth more fully in the Government's Opposition to the defendant's Pretrial Motions, as a leader of the Cartel, the defendant's activities included providing security for Marín, one of the highest-ranking members of the FARC. The defendant also attended multiple meetings with other members of the Cartel and drug traffickers associated with the FARC, in which attendees planned ways in which the Cartel could cooperate with the FARC with respect to narcotics trafficking, and conspired regarding the provision of weapons to the FARC. (Dkt. 79 at 4–6).

## II.  The Government's Discovery Productions

On July 22, 2020, the Court entered a protective order in this case governing the production of unclassified discovery material. (Dkt. 31). The Government subsequently produced unclassified discovery which exceeded the requirements of Rule 16, *Brady*, *Giglio*, and their progeny. To date, the Government has made seven productions of unclassified discovery material, totaling over 105 gigabytes of data. These productions are summarized below.

On June 30, 2020, the Government produced the following materials:

- the Indictment;

- law enforcement reports and attachments related to the defendant's arrest; and

- The complaint in *United States v. Adel El Zabayar*, 20 Mag. 5469 (S.D.N.Y.), in which a co-conspirator of the defendant is charged.

On September 4, 2020, the Government produced the following materials:

_____

designated two successor organizations, FARC-EP and Segunda Marquetalia, noting that Marín "is the founder and overall leader of Segunda Marquetalia. *Id.*

- search warrants and accompanying affidavits for various electronic accounts, including accounts used by the defendant;

- materials related to the cocaine-importation conspiracy charged in *United States v. Hernández Solarte, et al.*, 18 Cr. 262 (VEC)—in which Hernández and three other individuals associated with the FARC are charged—including audio and video recordings, draft translations of transcripts, DEA reports, and documents received pursuant to a Mutual Legal Assistance Treaty request from Colombia;

- publicly available video and audio recordings of members of the charged conspiracy, including the defendant;

- materials related to the cocaine-importation conspiracy charged in *United States v. Flores*, 15 Cr. 765 (PAC)—in which two of Maduro's nephews were convicted—including trial transcripts and exhibits, suppression hearing transcripts and exhibits, audio and video recordings, phone records, business records, and draft translations;

- subpoena returns pertaining to the defendant and his co-conspirators;

- materials related to the cocaine-importation conspiracy charged in *United States v. Walid Makled-García*, S1 09 Cr. 614 (RWS)—in which Walid Makled-García is charged with participating in a large-scale narcotics trafficking operation, including in association with the Cartel and the FARC—including DEA reports, audio recordings, draft translations, and other materials obtained from Venezuela;

- documents memorializing statements that the defendant made to law enforcement; and

- data obtained pursuant to search warrants from the defendant's two Instagram accounts and the defendant's Twitter account.

On November 24, 2020, the Government produced the following materials:

- search warrants and accompanying applications for various electronic accounts, including accounts believed to be used by the defendant;

- additional documentation relating to the defendant's arrest, including items seized incident to his arrest;

- additional subpoena returns from various entities and an accompanying index;

- materials related to the 5.6-ton cocaine shipment discussed in Indictment ¶ 15(d), including DEA reports about the seizure, photographs taken in connection with the

seizure, and data and information related to the aircraft used to transport the cocaine;

- materials related to a May 10, 2009 seizure of approximately 1,645 kilograms of cocaine in Honduras, including law enforcement reports and other documentation; photographs taken in connection with the seizure; a report related to the aircraft used to transport the cocaine; and Indictment 09 Cr. 529 (DAB), in which two individuals arrested in connection with the seizure are charged;

- materials related to the 2013 1.3-ton cocaine shipment discussed in Indictment ¶ 15(i), including DEA reports about the seizure, photographs taken in connection with the seizure, and documentation provided by foreign law enforcement;

- materials received through a DEA tip line regarding the charges contained in the Indictment;

- materials related to Cabello, including business and financial documents and related photographs;

- various other recordings, financial records, and emails obtained during the course of the investigation of and relating to the defendant's co-conspirators and others; and

- the complaint in *Silvercorp USA, Inc. v. Rendon*, a civil litigation regarding alleged efforts to overthrow the Maduro regime in Venezuela, in which the defendant's alleged role in those efforts is discussed.

Additionally, on February 26, 2021, March 16, 2021, April 19, 2021, July 22, 2021, and January 5, 2022, the Government produced materials related to an investigation by the U.S. Attorney's Office for the Southern District of Florida into Jordan Goudreau and others regarding their alleged efforts to overthrow the Maduro regime in Venezuela. With defense counsel's consent, those productions were made on an attorneys'-eyes-only basis, in light of the ongoing nature of the underlying investigation and associated witness safety issues. The Government will

continue to produce, on a rolling basis, any additional discoverable material from the Southern

District of Florida investigation.[3]

## III.   Pretrial and CIPA Motions

On January 28, 2022, the defendant filed pretrial motions (the "Pretrial Motions") arguing,

among other things, that the Court should order the Government to disclose information in its

possession regarding the defendant's alleged "involvement in anti-Maduro activities as well as the

identities of witnesses who have failed to indicate [the defendant's] involvement in the alleged

conspiracy." (Dkt. 71 at 29–31).

On February 8, 2022, the Government filed a classified, *ex parte* submission pursuant to

Section 4 of the Classified Information Procedures Act ("CIPA") and Federal Rule of Criminal

Procedure 16(d) concerning classified discovery. (Dkt. 76).

On March 15, 2022, the Court heard oral argument on the Pretrial Motions, after which the

Court denied the Pretrial Motions in their entirety. In the Court's Opinion and Order, issued on

March 17, 2022, the Court explained, with respect to alleged *Brady* material, the following:

> The Government appears to be in compliance with its obligations under Rule 16,
> *Brady*, and *Giglio*. The Government avers that it has no relevant and discoverable
> witness statements in its possession that are responsive to Defendant's request but
> has committed to producing any such statements on a rolling basis. The
> Government also has committed to working with defense counsel to identify the
> "witness" from the 2014 email. Finally, the Government has committed to
> providing Defendant with Jencks Act material, including non-testifying witness

---

[3] Because the foregoing paragraph discusses an ongoing investigation, and because the
discovery related to that investigation was produced to defense counsel on an attorneys'-eyes-only
basis, the Government has redacted the foregoing paragraph in the publicly-filed version of this
memorandum and respectfully requests that the unredacted version of the memorandum that it
submitted to the Court be maintained under seal until the Court rules otherwise.

statements, at least 30 days before trial. Thus, at this time, no order is necessary, and the motion is denied.

(Dkt. 89 at 22).

On March 29, 2022, the Court held an *ex parte* conference with defense counsel relating to the Government's CIPA submission.

An *ex parte* conference with the Government is scheduled for July 21, 2022, so the Court may rule on the particulars of the Government's CIPA Section 4 motion.

## IV.   The Defendant's Motion to Compel

On May 11, 2022, the defendant filed, under seal, the Motion. The Motion includes a list of "specific demands" that fit into three categories: (i) requests for materials related to meetings between the defendant and DEA agents and SDNY prosecutors (Mot. at 7 ¶¶ 4(a)-(b)); (ii) requests for materials related to particular meetings identified by the defendant (*id*. at 7-8 ¶¶ 4(c)-(g)); ██

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████

With respect to the first category—materials sought regarding meetings between the defendant and the DEA and SDNY—the Government has already produced all materials in its possession. In particular, on September 4, 2020, the Government produced notes from a July 16, 2014 meeting between the defendant, his attorneys, DEA agents, and SDNY prosecutors (Bates

Stamps AC007841-AC007849).[4] On June 13, 2020, the Government produced notes taken November 13, 2013, of a meeting between the defendant and DEA agents in Madrid (Bates Stamp AC012741). In addition, the Government has produced a DEA report of a meeting between the defendant and DEA agents on April 7, 2014, that was not requested in the Motion (Bates Stamps AC007838-AC007840).

In these meetings, the defendant denied participation in drug trafficking, but the records of these meetings reflect, for example, that the defendant admitted to having a relationship with the FARC and to attending a meeting between Marín, a FARC leader, and Carvajal, a leader of the Cartel, both of whom are charged alongside the defendant in the instant Indictment. At this meeting, Carvajal offered rocket launchers to the FARC. About fifteen days later, Carvajal delivered rocket launchers to the defendant who provided them to the FARC, and the defendant understood one of the launchers would be provided to Marín.

## DISCUSSION

### I.  Applicable Law

#### A.  Government's Disclosure Obligations

The disclosure obligations set forth in Rule 16, *Brady*, and *Giglio* apply to materials in the Government's "possession." In this vein, the Government must disclose exculpatory information to the defense, but "the *Brady* obligation extends only to material evidence . . . that is known to the prosecutor." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). The obligation to

---

[4] The defendant's Motion identifies the date of this meeting as July 23, 2014, (Mot. at 7 ¶ 4(b)), but the only record in the Government's possession of the described meeting is dated July 16, 2014.

produce exculpatory evidence known to the Government extends to "any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Avellino*, 136 F.3d at 255 (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)); *see also United States v. Locascio*, 6 F.3d 924, 948–49 (2d Cir. 1993) (declining to "infer the prosecutors' knowledge simply because some other government agents knew about" additional evidence where federal prosecutors were unaware of documents in possession of FBI agents who were "uninvolved in the investigation or trial of the defendants"); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (declining to impute knowledge of prosecutor in Florida to prosecutor in New York and noting that the "Department of Justice alone has thousands of employees").

Therefore, in framing the scope of the Government's *Brady* obligation regarding materials in the possession of another law enforcement agency, courts have explained that "a prosecutor's duty to review documents in the possession, custody, or control of another agency arises where the Government conducts a 'joint investigation' with another agency." *United States v. Collins*, 409 F. Supp. 3d 228, 239 (S.D.N.Y. 2019); *see also United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) (*Brady* obligation extends to agencies that act as "an arm of the prosecutor"). In other words, discovery and disclosure obligations only extend to "information

known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)). When conducting this analysis, the involvement of employees from one component of an agency in an investigation does not render the entirety of that agency part of the prosecution team. *See, e.g.*, *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) ("While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned."); *see also Locascio*, 6 F.3d at 949 (refusing to impute to AUSAs knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial of the defendants"); *cf. United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (holding that, in the context of a speedy trial motion, other members of the Department of Justice who were involved in making decisions about timing and progress of the case were part of the "government" for Rule 16 purposes).

In determining whether an agency or a component of an agency is part of the prosecution team, and their records therefore in the "possession" of the Government, courts in this district consider five factors articulated by Judge Oetken in *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018); *see also Collins*, 409 F. Supp. 3d at 239 (following five factors enumerated in *Middendorf*). Those factors are "whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the

case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Middendorf*, 2018 WL 3956494, at \*4.

### B.  Applicable Statutes of Limitations

Narcotics-importation conspiracy, in violation of Title 21, United States Code, Section 951; possession of machineguns and destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), and 2; and conspiracy to possess machineguns and destructive devices, in violation of Title 18, United States Code, Section 924(o), have five-year statutes of limitations. *See* 18 U.S.C. § 3282(a).

Narco-terrorism conspiracy, in violation of Title 21, United States Code, Section 960a, however, has either no statute of limitations or a statute of limitations of eight years, depending on the circumstances. Title 18, United States Code, Section 3286(a) provides, "no person shall be prosecuted, tried, or punished for any noncapital offense involving a violation of any provision listed in section 2332b(g)(5)(B) . . . unless the indictment is found or the information is instituted within 8 years after the offense was committed." Section 2332b(g)(5)(B), in turn, includes "section 1010A of the Controlled Substances Import and Export Act (relating to narco-terrorism)," which includes Section 960a of Title 21. 18 U.S.C. § 2332b(g)(5)(B)(iv).[5]

---

[5] In 2001, Congress extended the statute of limitations for narco-terrorism conspiracy and other terrorism crimes in certain circumstances. *See* P.L. 107–56, Oct. 26, 2001, 115 Stat 272. As codified in Title 18, United States Code, Section 3286(b), "Notwithstanding any other law, an indictment may be found or an information instituted at any time *without limitation* for any offense listed in Title 18, United State Code, Section 2332b(g)(5)(B) [which includes narco-terrorism conspiracy], if the commission of such offense resulted in, or created a foreseeable risk of, death or serious bodily injury to another person."

## II.   Argument

### A.   The Defendant Misidentifies the Applicable Statutes of Limitations

In his Motion, the defendant asserts that "The statute of limitations for the conspiracy charged against General Alcalá Cordones' is five years." (Mot. at 6). The narco-terrorism conspiracy charged in Count One of the Indictment, however, has at least an eight-year statute of limitations. *See* 18 U.S.C. §§ 3286(a); 2332b(g)(5)(B)(iv). Even on the defendant's withdrawal theory, in which the defendant withdrew from the conspiracy in 2014, he would still be guilty of narco-terrorism conspiracy. (Mot. at 6) ("[Materials] will demonstrate that General Alcalá Cordones' unequivocally and publicly effectuated his withdrawal from the charged conspiracy by 2014."). Accordingly, the defendant is wrong that any withdrawal in 2014 is a complete defense because he would still be guilty of Count One. Nevertheless, and as set forth below, the Government remains in compliance with its discovery obligations as to all of the charges in the Indictment, including with respect to the defendant's theory of withdrawal.

### B.   The Defendant's Motion to Compel Additional Discovery Is Without Merit

Irrespective of any statute of limitations or withdrawal arguments, the Government remains in compliance with its disclosure obligations. To the extent the defendant requests materials within the possession of the prosecution team, the materials have been disclosed, and any classified issues are addressed separately pursuant to CIPA. To the extent the defendant seeks unclassified materials not in the possession of the prosecution team, discovery and disclosure by the Government is not required, and the defendant's Motion should be denied.

As described above, and contrary to the inaccurate assertion in the Motion that "[n]o such information has been disclosed," (Mot. at 6), the Government has made productions of documentation responsive to the defendant's request for materials related to meetings between the

12

defendant and DEA agents and SDNY prosecutors, (Mot. at 7 ¶¶ 4(a)-(b)). (*See supra* 7-8). In fact, for each of the meetings between DEA and the defendant identified in the defendant's Motion, (Mot. at 7 ¶¶ 4(a)-(b)), the Government has produced all notes of those meetings in DEA's possession, (*see supra* 7-8).

In addition, to the extent the defense is seeking classified information in its requests of materials regarding particular meetings attended by the defendant (Mot. at 7-8 ¶¶ 4(c)-(g)), the Government has addressed those arguments in a brief filed with the Court pursuant to Section 4 of CIPA and a classified supplement to this brief.

███████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████   None of the Other Agencies, however, "are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case." *Barcelo*, 628 F. App'x at 38 (quoting *Stewart*, 433 F.3d at 298). In such circumstances the Government has no obligation to produce materials outside its prosecution team's possession.

The defendant does not—and cannot—assert that the Government has conducted a joint investigation with any of the Other Agencies. While a joint investigation might create additional disclosure obligations, there is no basis for such a finding here. None of the Other Agencies satisfies *any* of the factors used by courts to determine agencies involved in joint investigations with the prosecution team. *See Middendorf*, 2018 WL 3956494, at *4. Not one of the Other

Agencies could fall into any of the categories used by courts to determine whether a join investigation occurred. *Id.*; (*see supra* 10).

Because the Government has complied with its disclosure obligations, and because the defendant requests materials not in the possession of the prosecution team or any agency with which an investigation was conducted jointly, the Court should deny the defendant's motion.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's Motion.

Dated: New York, New York
       June 15, 2022

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York


                              By:    /s/
                                     Jason A. Richman
                                     Kyle A. Wirshba
                                     Kaylan E. Lasky
                                     Assistant United States Attorneys