N6TVCORP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                         11 Cr. 205 (AKH)

CLIVER ANTONIO ALCALA
CORDONES,

              Defendant.         Plea

------------------------------x

                             New York, N.Y.
                             June 29, 2023
                             2:50 p.m.

Before:

                  HON. ALVIN K. HELLERSTEIN,

                             District Judge

                      APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
KYLE A. WIRSHBA
KAYLAN E. LASKY
     Assistant United States Attorneys

CESAR de CASTRO
CRISTIAN FRANCOS
ADAM S. KAUFMANN
VALERIE GOTLIB
     Attorneys for Defendant


Also Present:  Gabriel Mitre, Interpreter (Spanish)
               Elizabeth Peartree, Intern-USAO

N6TVCORP

```
1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your

3    appearances for the record.

4              MR. WIRSHBA:  Good afternoon, your Honor.

5              Kyle Wirshba, on behalf of the government.  I'm joined

6    at counsel table by my colleague Kaylan Lasky and, with the

7    Court's permission, I am also here with an intern from our

8    office, Elizabeth Peartree.

9              THE COURT:  Thank you.

10             MR. de CASTRO:  Good afternoon, your Honor.

11             For Mr. Alcala Cordones, Cesar de Castro, Cristian

12   Francos, Valerie Gotlib, and Adam Kaufmann, all seated at

13   counsel's table.  And Mr. Alcala Cordones is seated to my

14   right.

15             THE COURT:  Thank you.

16             Good afternoon, Mr. Alcala Cordones.

17             Are you working?

18             THE INTERPRETER:  I'm sorry, your Honor.  The

19   interpreter requests a repetition.

20             THE COURT:  Sorry?

21             THE INTERPRETER:  The interpreter could not hear your

22   Honor.

23             THE COURT:  Is that better?

24             THE INTERPRETER:  Yes.

25             THE COURT:  Okay.  Are we all set?
```

N6TVCORP

1          Mr. Cordones, would you kindly take off your mask.

2          THE DEFENDANT:  Thank you very much.

3          THE COURT:  Okay.  Brigitte, go ahead.

4          THE DEPUTY CLERK:  Want me to arraign him?

5          THE COURT:  Yes.

6          THE DEPUTY CLERK:  All right.  You are --

7          THE COURT:  We have a superseding information filed by

8     the government.  And now, Mr. Alcala Cordones, you're going to

9     be asked to plead to it.

10          Go ahead, Brigitte.

11          THE DEPUTY CLERK:  You are Cliver Antonio Alcala

12    Cordones?

13          THE DEFENDANT:  Yes.

14          THE DEPUTY CLERK:  Have you signed this waiver of

15    indictment?

16          THE COURT:  This one-page document, do you have it?

17          THE DEFENDANT:  That's right.

18          THE COURT:  And you signed it?

19          THE DEPUTY CLERK:  Before you signed it, did you

20    discuss it with your attorney?

21          THE DEFENDANT:  That's right.

22          THE DEPUTY CLERK:  Did he explain it to you?

23          THE DEFENDANT:  Yes, sir.

24          THE DEPUTY CLERK:  Do you understand what you are

25    doing?

N6TVCORP

 1            THE DEFENDANT:  If you can repeat that.

 2            THE COURT:  Do you understand that you --

 3            THE DEPUTY CLERK:  Do you understand --

 4            THE COURT:  Go ahead, Brigitte.

 5            THE DEPUTY CLERK:  Do you understand what you are

 6   doing?

 7            THE DEFENDANT:  Yes, I understand.

 8            THE DEPUTY CLERK:  Do you understand that you are

 9   under no obligation to waive indictment?

10            THE DEFENDANT:  Yes.

11            THE DEPUTY CLERK:  Do you understand that if you do

12   not want to waive indictment, if the government wants to

13   prosecute you, they will have to present this case to a grand

14   jury, which may or may not indict you?

15            THE DEFENDANT:  I understand that.

16            THE DEPUTY CLERK:  Do you realize that by signing this

17   waiver of indictment, you have given up your right to have this

18   case presented to a grand jury?

19            THE DEFENDANT:  Yes, of course.

20            THE DEPUTY CLERK:  Do you understand what a grand jury

21   is?

22            THE DEFENDANT:  Yes.

23            THE DEPUTY CLERK:  Have you seen a copy of the

24   information?

25            THE DEFENDANT:  That's right.

N6TVCORP

1          THE DEPUTY CLERK:  Would you like me to read it to

2     you?

3          THE DEFENDANT:  Yes.

4          MR. de CASTRO:  One second, your Honor.

5          THE DEFENDANT:  No, excuse me.

6          THE DEPUTY CLERK:  How do you plead?

7          THE COURT:  Just to make sure, if you haven't had the

8     indictment read to you -- not the indictment, the superseding

9     information read to you, we'll be pleased to read it now.  If

10    you've already read it, you could tell me, It's not necessary,

11    Judge.

12         THE DEFENDANT:  It's not necessary.  Thanks very much.

13         THE COURT:  Okay.  Brigitte.

14         THE DEPUTY CLERK:  Would you like me to swear him

15    Judge?

16         THE COURT:  How do you plead?

17         THE DEFENDANT:  Both charges?

18         THE COURT:  Yes.

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Before I can accept a guilty plea, Mr. --

21    how do I call you, Alcala or -- Mr. Alcala or Mr. Cordones or

22    both?

23         THE DEFENDANT:  Mr. Alcala, if that's no problem.

24         THE COURT:  No problem.

25         Before I can accept your plea of guilty, Mr. Alcala, I

N6TVCORP

1    have to ask you a number of questions under oath.

2              THE DEFENDANT:  Right.

3              THE COURT:  You have to tell me the truth, the whole

4    truth, and nothing but the truth.

5              THE DEFENDANT:  Right.

6              THE COURT:  If you don't do that, you can expose

7    yourself to more punishment.

8              THE DEFENDANT:  Right.

9              THE COURT:  Shall we proceed to give you the oath?

10             THE DEFENDANT:  Right.

11             THE COURT:  Brigitte.  All right, Brigitte.

12             (Defendant sworn)

13             THE COURT:  You can put your hand down, Mr. Alcala.

14             THE DEFENDANT:  Thank you.

15             THE COURT:  What is your full name?

16             THE DEFENDANT:  Cliver Antonio Alcala Cordones.

17             THE COURT:  How old are you, sir?

18             THE DEFENDANT:  I turn 62 in November.

19             THE COURT:  Are you married?

20             THE DEFENDANT:  Yes, that's right.

21             THE COURT:  Do you have any dependent children?

22             THE DEFENDANT:  I have three daughters.

23             THE COURT:  Are they under the age of 21?

24             THE DEFENDANT:  The youngest is eight.

25             THE COURT:  And do they live with their mother?

N6TVCORP

1          THE DEFENDANT:  The three of them live with their

2     mother.

3          THE COURT:  Where are you a citizen?

4          THE DEFENDANT:  Venezuela; Caracas, Venezuela.

5          THE COURT:  Are you also a citizen of the United

6     States?

7          THE DEFENDANT:  No.

8          THE COURT:  You have a right as a citizen of Venezuela

9     to consult with your consular officials before the proceeding

10    in this court.

11         THE DEFENDANT:  I will waive my right to my consulate

12    of my country of origin.

13         THE COURT:  Where were you educated?

14         THE DEFENDANT:  Excuse me?

15         THE COURT:  Where were you educated?

16         THE DEFENDANT:  At age 17, I began studying at the

17    Venezuela Military Academy for four years.  And I entered the

18    armed forces in 1983 as sublieutenant official.

19         THE COURT:  Before you were entering the army, did you

20    finish college?

21         THE DEFENDANT:  In Venezuela, university studies also

22    serve for the military.  That was for my university studies.

23         THE COURT:  You can read and write Spanish?

24         THE DEFENDANT:  That's right.

25         THE COURT:  We are interpreting this proceeding from

N6TVCORP

1     Spanish to English and from English to Spanish.

2             THE DEFENDANT:  That's right.

3             THE COURT:  All right.

4             So you entered the military in 1983.

5             THE DEFENDANT:  That's right, through 2013.

6             THE COURT:  Served until 2013?

7             THE DEFENDANT:  That's the time that I completed my

8     service.

9             THE COURT:  What was the highest rank you achieved?

10            THE DEFENDANT:  Major general of the Venezuelan armed

11    forces.

12            THE COURT:  Before you came in today to this court,

13    have you had any alcohol or medicines or anything else that can

14    blur your thinking?

15            THE DEFENDANT:  No, sir.

16            THE COURT:  Are you alert to what is going on?

17            THE DEFENDANT:  Fully, sir.

18            THE COURT:  Have you discussed the case entirely with

19    Mr. de Castro?

20            THE DEFENDANT:  Yes, as with all of the attorneys that

21    are with me.

22            THE COURT:  Are you satisfied with the services of

23    Mr. de Castro and his legal team?

24            THE DEFENDANT:  Very satisfied, sir.

25            THE COURT:  Has anyone intimidated you or caused you

N6TVCORP

1    to have fear in order to get you to plead guilty?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  Has anyone made any promises other than

4    that expressed in a letter of June 15, 2023 to Mr. de Castro?

5              THE DEFENDANT:  No.

6              THE COURT:  Are you offering to plead guilty because

7    it's something you want to do in the circumstances?

8              THE DEFENDANT:  I decided so, sir.

9              THE COURT:  Your free act and will?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that in United States

12   courts, you cannot be found guilty of a crime unless the

13   government proves your guilt beyond a reasonable doubt to the

14   satisfaction unanimously of a jury?

15             THE DEFENDANT:  I know, sir.

16             THE COURT:  That applies to you, as well as to any

17   citizen of the United States.

18             THE DEFENDANT:  Right.

19             THE COURT:  And you would have the right to be

20   assisted by a lawyer at every step of the proceeding.

21             THE DEFENDANT:  I have had that.

22             THE COURT:  And with the help of that lawyer, you can

23   challenge any witness, confront any witness, and cross-examine

24   that witness.  Do you understand that?

25             THE DEFENDANT:  Right.

N6TVCORP

1        THE COURT:  Do you understand you have a privilege of

2   self-incrimination; that is to say, you are presumed to be

3   innocent, unless and until the government proves you guilty?

4        THE DEFENDANT:  I understand that clearly, sir.

5        THE COURT:  And with the help of the lawyer, you could

6   cause any witness having favorable information to come to the

7   trial, whether that witness wishes to do so or not.

8        THE DEFENDANT:  I know.

9        THE COURT:  And you, yourself, would have the right to

10  testify.  But if you didn't want to testify, you wouldn't have

11  to.  And no inference could be drawn against you for not

12  testifying.

13        THE DEFENDANT:  Right.

14        THE COURT:  But if you plead guilty, you give up these

15  rights and you authorize me to sentence you just the same way

16  as I'd be authorized by a jury verdict brought in against you.

17        THE DEFENDANT:  I know, sir.

18        THE COURT:  One possibility of pleading guilty is a

19  removal from this country.  Do you understand that?

20        THE DEFENDANT:  I understand that, sir.

21        THE COURT:  Without an ability to return to this

22  country.

23        THE DEFENDANT:  I understand that, sir.

24        THE COURT:  Now, I've seen an agreement and a letter

25  of June 15 from the United States Attorney to Mr. de Castro,

N6TVCORP

1    with signatures on the back page.  Is that your signature over

2    the name Cliver Antonio Alcala Cordones?

3              THE DEFENDANT:  That's right, sir.

4              THE COURT:  Mr. de Castro, is that your signature?

5              MR. de CASTRO:  It is, your Honor.

6              THE COURT:  These were dated June 29, 2023.

7              Is that correct?

8              MR. de CASTRO:  That's correct.

9              THE COURT:  Mr. Alcala, did you go over this very

10   carefully with Mr. de Castro?

11             THE DEFENDANT:  Very carefully, sir.

12             THE COURT:  You are being charged with two counts

13   under a superseding information.  Are you familiar with this

14   superseding information?  You just pleaded guilty to it, but

15   you're familiar with it, are you not?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And you're familiar with the allegations

18   of each count?

19             THE DEFENDANT:  That's right, sir.

20             THE COURT:  Do you wish to plead guilty to both those

21   counts?

22             THE DEFENDANT:  Both, sir.

23             THE COURT:  Now, you're aware, I take it, you were

24   charged in the first count with providing and aiding and

25   abetting the provision of material support or resources to a

N6TVCORP

foreign terrorist organization, that is, the *Fuerzas Armadas Revolucionarias de Colombia.*

THE DEFENDANT:  That's right.  That's right, sir.

THE COURT:  Are you aware that that term — that count — carries a maximum term of imprisonment under the statutes of the United States of 15 years in custody?

THE DEFENDANT:  I understand that, sir.

THE COURT:  Plus supervised release for life.

THE DEFENDANT:  Right, sir.

THE COURT:  And a fine.

I didn't get an answer.

THE DEFENDANT:  Yes, I understand there is a possibility of a fine.

THE COURT:  And $100 mandatory special assessment.

THE DEFENDANT:  Right.

THE COURT:  And under Count Two, are you aware that that charges you with receiving and transferring firearms and ammunition, knowing and having reasonable cause to believe that such firearms and ammunition would be used to commit the federal crime of terrorism that was charged in Count One of the information?

THE DEFENDANT:  That's right.

THE COURT:  And are you aware that that Count Two carries a maximum term of imprisonment of 15 years, a maximum term of supervised release of three years, fine, and a

N6TVCORP

1    mandatory special assessment of $100.

2              THE DEFENDANT:  Right.

3              THE COURT:  As to the supervised release, conditions

4    are attached, which if they are to be violated, can result in a

5    hearing before the Court and for the term of custodial

6    punishment.

7              THE DEFENDANT:  Right.

8              THE COURT:  Many crimes have a period of limitations

9    within which they have to be alleged or they are forever barred

10   from the government.  You have waived that defense to these two

11   counts.  Are you aware of that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And there's a forfeiture allegation by the

14   government which you are also wishing to admit under Count One

15   of the indictment.  Are you aware of that?

16             THE DEFENDANT:  Right.

17             THE COURT:  What is the form, Mr. Wirshba, of that

18   forfeiture?  Is it any money?

19             MR. WIRSHBA:  Your Honor, the government is not

20   prepared at this time to make a forfeiture application, but

21   will do so at the appropriate time prior to --

22             THE COURT:  Can you tell me what the form of it is

23   right now.

24             MR. WIRSHBA:  Your Honor, it would be a monetary

25   forfeiture, if any.

N6TVCORP

1          THE COURT:  Of money seized by the government?

2          MR. WIRSHBA:  No, your Honor.  It would be in lieu of

3    money seized by the government.

4          THE COURT:  Bottom of page 2 of the letter and going

5    on to pages 3 and 4, there's a recitation of the sentencing

6    guidelines and how they apply to your case.

7          Have you gone over that with Mr. de Castro?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Under the American law -- federal law,

10   crimes are assigned a certain number on a grid, and the

11   criminal history is assigned a certain number, and they make up

12   the sentencing guidelines.  And they are advisory on the judge.

13         Are you aware of that?

14         THE DEFENDANT:  I understand, sir.

15         THE COURT:  I have to make my own study before I

16   sentence you.  And I may or may not agree with this study

17   that's presented on pages 2, 3, and 4 of the letter we're

18   talking about.  Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And it's possible I could disappoint you

21   in my sentence, disappoint your expectations.

22         Do you understand that?

23         THE DEFENDANT:  I understand so, sir.

24         THE COURT:  Whether or not you're disappointed would

25   not give you basis to withdraw from the plea, once I accept it.

N6TVCORP

1          Do you understand?

2          THE DEFENDANT:  I understand, sir.

3          THE COURT:  The analysis we are talking about comes

4    out to a range of 360 months or 30 years to life as a potential

5    sentence against you, a recommended sentence against you by the

6    guidelines.  You're aware of that?

7          MR. de CASTRO:  Judge, I think because of the

8    maximum --

9          THE COURT:  Are you aware that the potential sentence

10   under the guidelines is 360 months to life?

11         MR. WIRSHBA:  Your Honor, if I may.

12         I believe that because these two crimes have a 15-year

13   statutory max, the maximum and the guidelines range is just 360

14   months.

15         THE COURT:  360 months.

16         MR. WIRSHBA:  Yes, your Honor.

17         THE COURT:  I stand corrected.

18         That under the statute and guidelines, you can be

19   punished up to 360 months, or 30 years.

20         THE DEFENDANT:  Right, sir.

21         THE COURT:  If I were to sentence you within -- up to

22   that point within the guidelines, you would not have a right to

23   appeal.

24         THE DEFENDANT:  I understand, sir.

25         THE COURT:  Or seek review after judgment.

N6TVCORP

```
 1              THE DEFENDANT:  Right, sir.

 2              THE COURT:  Or ask me for a departure; although you

 3    can ask me for a variance.

 4              THE DEFENDANT:  Right, sir.

 5              THE COURT:  Mr. Wirshba, is there anything else you

 6    want me to discuss under the letter?

 7              MR. WIRSHBA:  Your Honor, the government is prepared

 8    to read the elements of the offense, with the Court's

 9    indulgence.

10              THE COURT:  Should we then do the admission now or

11    after the elements of the offense?

12              MR. WIRSHBA:  I defer to the Court.

13              THE COURT:  Do the elements of the offense.

14              MR. WIRSHBA:  Yes, your Honor.

15              So the first count, Count One of the information --

16    I'm sorry, your Honor asked me to sit down.

17              Count One of the information charges material support

18    to a designated terrorist organization, in violation of Title

19    18, United States Code, Section 2339B.

20              That crime has three elements:

21              First, the defendant knowingly provided material

22    support or resources to a foreign terrorist organization, here,

23    the FARC.

24              Second, the defendant knew that the organization was a

25    designated terrorist organization or that the organization had
```

N6TVCORP

1    engaged or was engaged in terrorist activity or terrorism.

2         And third, after the conduct required for the offense

3    occurred, the offender was brought into or found in the United

4    States, even if the conduct required for the offense occurs

5    outside the United States.

6         Count Two is the transportation or receipt of a

7    firearm or ammunition for use in a crime of terrorism, in

8    violation of Title 18, United States Code, Section 924(h).

9         That crime has two elements:

10        First, that the defendant knowingly received or

11   transferred a firearm or ammunition.

12        And second, the defendant knew that the firearm would

13   be used in a federal crime of terrorism, which includes

14   material support to terrorists as charged in Count One of the

15   indictment.

16        Thank you, your Honor.

17        THE COURT:  How would the government set out to prove

18   the case?

19        MR. WIRSHBA:  Your Honor, the government would prove

20   its case primarily through witness testimony; but it would also

21   include materials gathered from mutual legal assistance

22   treaties from outside of the United States, as well as

23   electronic evidence seized through search warrants.

24        THE COURT:  How would you prove venue?

25        MR. WIRSHBA:  Your Honor, the government would prove

N6TVCORP

venue in this case because the defendant was first brought to
the Southern District of New York and landed here in this
district.

THE COURT:  So although it was a crime that was done
extraterritorially, there's venue and jurisdiction to the point
where the defendant was brought into the United States.

MR. WIRSHBA:  Yes, your Honor.  Precisely.

THE COURT:  Mr. de Castro, have you reviewed the
government proofs?

MR. de CASTRO:  Yes, your Honor.

THE COURT:  Do you believe that the government can
prove a *prima facie* case?

MR. de CASTRO:  I do.

THE COURT:  Is there any reason why Mr.  -- why I
should not accept a plea of guilty by Mr. Alcala?

MR. de CASTRO:  No reason.

THE COURT:  Mr. Alcala, are you offering to plead
guilty because you believe that you are, in fact, guilty of
each of the Counts One and Two of the superseding information?

THE DEFENDANT:  Yes, sir.

THE COURT:  At this point, I would ask you to tell me
what you did.  But I see that there is an admission in the plea
letter that we were discussing before.  I'm going to read it to
you.  You'll tell me that if, in fact, you believe that each
and every part of this is true.  I'll stop at each sentence

N6TVCORP

1    along the way.

2              The defendant — that is you, Mr. Alcala Cordones —

3    hereby admits the following facts:

4              First, beginning in or about 2006, while you were a

5    general in the National Bolivarian Armed Forces of Venezuela,

6    you provided support to the FARC.

7              I'll stop there.

8              Is that a true statement?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And is the National Bolivarian Armed

11   Forces of Venezuela the military of Venezuela?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  You were a general?

14             THE DEFENDANT:  I was the commander of the military

15   part.

16             THE COURT:  Equivalent to a general?

17             THE DEFENDANT:  Yes, yes.

18             THE COURT:  Was this military under the direction of

19   Hugo Chavez, among others?

20             THE DEFENDANT:  That's right, sir.

21             THE COURT:  Was Mr. Chavez then the president of

22   Venezuela?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Did you know in 2006, around the time you

25   were a general, that FARC members engaged in drug trafficking

N6TVCORP

1    and kidnappings to support its goals?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And the paragraph carries out -- it sets

4    out a number of examples.  First example:  Did you know that

5    members of FARC -- withdrawn.  Did you know that -- start

6    again.  I'm sorry.

7              Did you, as general, prevent members of FARC and

8    associates from being arrested by Venezuela law enforcement

9    officials?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Or by the military?

12             THE DEFENDANT:  I commanded the military.

13             THE COURT:  So you, as commander, prevented members of

14   FARC and associates from being arrested?

15             THE DEFENDANT:  That's right, sir.

16             THE COURT:  Mr. Wirshba, there was a phrasing "engaged

17   by the Venezuela military," what does that mean?

18             MR. WIRSHBA:  Your Honor, through the wording

19   "engaged," we intended to indicate conflict.

20             THE COURT:  Intend to what?

21             MR. WIRSHBA:  Conflict, your Honor.  So conflict

22   between the FARC and the military, as opposed to civilian

23   arrests.

24             THE COURT:  What do you mean by -- you can take off

25   the mask when you speak.

N6TVCORP

| | |
|---|---|
| 1 | What do you mean by contact? |
| 2 | MR. WIRSHBA:  I mean military contact, your Honor. |
| 3 | THE COURT:  What is the charge, that Mr. Alcala |
| 4 | prevented contact between FARC members and the military? |
| 5 | MR. WIRSHBA:  Yes, your Honor.  Whereas, otherwise, |
| 6 | the military may have engaged the FARC, the defendant prevented |
| 7 | the military from engaging the FARC militarily. |
| 8 | THE COURT:  Is that so, Mr. Alcala?  Did you, as |
| 9 | general, command that the military would not pursue members of |
| 10 | FARC or their associates? |
| 11 | THE DEFENDANT:  To prevent their contact with the |
| 12 | FARC, sir. |
| 13 | THE COURT:  The answer is yes? |
| 14 | THE DEFENDANT:  Yes. |
| 15 | THE COURT:  And did you, when you were general, |
| 16 | provide protection, including freedom of movement and freedom |
| 17 | from interference, for members of FARC and their associates? |
| 18 | THE DEFENDANT:  Yes, sir. |
| 19 | THE COURT:  Even though you knew that they trafficked |
| 20 | in cocaine? |
| 21 | THE DEFENDANT:  Yes, sir. |
| 22 | THE COURT:  And even though you knew -- withdrawn. |
| 23 | And you, in addition, provided weapons to FARC? |
| 24 | THE DEFENDANT:  Yes, sir. |
| 25 | THE COURT:  And among other things, the weapons |

N6TVCORP

1   included 20 grenades?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  And two grenade launchers?

4           THE DEFENDANT:  3.5 grenade launchers, sir.

5           THE COURT:  Both intended for a Luciano Marín Arango?

6           THE DEFENDANT:  Half for Mr. Luciano Marín Arango, and

7   the other half for Mr. Londoño, Timochenko.

8           THE COURT:  And who are they?

9           THE DEFENDANT:  They were the number one and number

10  two people of the FARC in the territory that corresponded to me

11  in Venezuela.

12          THE COURT:  And they were involved in -- and were they

13  involved in trafficking in narcotics?

14          THE DEFENDANT:  Whether they did so, that was their

15  responsibility; at no point did they do it with me.

16          THE COURT:  But you knew they were doing it.

17          THE DEFENDANT:  They did it in their territory.

18          THE COURT:  But you knew about that?

19          THE DEFENDANT:  It was a consequence of many years,

20  because that organization depended on drug trafficking to

21  support themselves.

22          THE COURT:  The question is whether you knew that.

23          THE DEFENDANT:  I knew it, sir.

24          THE COURT:  Knowing that you provided weapons and

25  other assistance to that organization and to these people.

N6TVCORP

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  And you were aware that the gentleman

3    named Luciano Marín Arango, also was known as Iván Márquez, and

4    also was known as Rodrigo Londoño Echeverri, and also known as

5    Timochenko.

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Did you know that the United States

8    Secretary of State had designated FARC a foreign terrorist

9    organization?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  You knew that at the time you were giving

12    material aid and support to FARC?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  You knew that FARC had been engaged in

15    terrorist activities?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  And in terrorism, that was defined in

18    United States law.

19              THE DEFENDANT:  That's right, sir.

20              THE COURT:  Did there come a time when you came to the

21    United States in Manhattan?

22              THE DEFENDANT:  Can you repeat the question please?

23              THE COURT:  Did there come a time when you came into

24    the United States?

25              THE DEFENDANT:  No, I turned myself in, in Colombia.

N6TVCORP

1          THE COURT:  And you were brought to the United States?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  To New York City?

4          THE DEFENDANT:  On the 26th -- on March 26th of 2020.

5          MR. WIRSHBA:  Your Honor, if I may proffer.

6          THE COURT:  You may.

7          MR. WIRSHBA:  The defendant was brought to Westchester

8    County first, and arrested there.

9          THE COURT:  Is that so, Mr. Alcala?

10          THE DEFENDANT:  When I got off the plane, I understand

11    that I was already under arrest.

12          THE COURT:  Was that in Westchester County?

13          MR. de CASTRO:  Your Honor, if I may.

14          I don't think he knew he was in Westchester at the

15    time.  We have no reason -- we are waiving that --

16          THE COURT:  You don't dispute that.

17          MR. de CASTRO:  We don't dispute that he was in White

18    Plains.  My understanding is that he landed in White Plains.

19          THE COURT:  Is there anything else I need to cover?

20          MR. WIRSHBA:  No, your Honor.  To the extent the

21    defendant is going to allocute in his own words, I think that

22    is all that remains.

23          THE COURT:  Is there anything I need to cover more,

24    Mr. de Castro?

25          MR. de CASTRO:  No, your Honor.

N6TVCORP

1          THE COURT:  Mr. Alcala.

2          MR. de CASTRO:  No, Judge, we're good.

3          THE COURT:  Anything else -- you want to tell me

4    something?  Mr. de Castro.

5          MR. de CASTRO:  No, your Honor.  No, your Honor.

6    Thank you.

7          THE COURT:  Mr. Alcala, I accept your plea of guilty

8    to Counts One and Two of the superseding information.  I find

9    that your plea is voluntary --

10          MR. WIRSHBA:  Your Honor, if I may.  I apologize.

11          I don't believe that the defendant has allocuted -- I

12    think there were facts laid out, but I don't think the

13    defendant has allocuted as to both counts.

14          THE COURT:  I thought I had covered that.

15          What did I miss?

16          MR. WIRSHBA:  I think your Honor just didn't ask the

17    defendant in his own words why it is that he's guilty of Count

18    One and Count Two.

19          THE COURT:  Why --

20          MR. WIRSHBA:  What he did that made him guilty of

21    Count One and also of Count Two, your Honor.

22          THE COURT:  He told me he gave material support,

23    right, and aided and abetted FARC, knowing that it was a

24    terrorist organization and engaged in terrorism.

25          MR. WIRSHBA:  He did, your Honor.

N6TVCORP

| | |
|---|---|
| 1 | THE COURT:  Told me that it was in the form of grenade |
| 2 | launchers and grenades. |
| 3 | MR. WIRSHBA:  He did, your Honor. |
| 4 | Then the government would just ask that you allocute |
| 5 | to the defendant as to the fact that he knew the firearm would |
| 6 | be used in a federal crime of terrorism. |
| 7 | THE COURT:  Did you know that? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | MR. WIRSHBA:  Thank you, your Honor. |
| 10 | THE COURT:  Anything else? |
| 11 | MR. WIRSHBA:  No, your Honor. |
| 12 | THE COURT:  Mr. Alcala, I accept your plea of guilty |
| 13 | to Counts One and Two of the superseding information.  I find |
| 14 | that your plea was voluntary, that you understand the |
| 15 | consequences, that there is an independent basis in fact to |
| 16 | support both your plea of guilty to Count One and your plea of |
| 17 | guilty to Count Two. |
| 18 | I instruct the clerk to enter the plea of guilty for |
| 19 | Mr. Alcala on the court dockets. |
| 20 | Sentencing will occur? |
| 21 | THE DEPUTY CLERK:  October 4th, at 12 noon. |
| 22 | THE COURT:  We order probation to develop a report. |
| 23 | We ask Mr. Wirshba to obtain a copy of this |
| 24 | allocution, to provide it to the probation officer prior to |
| 25 | conducting any interview of Mr. Alcala. |

N6TVCORP

1              And we order the probation officer to give

2    Mr. de Castro notice so that he or his staff may attend, if

3    they wish, to any interview.

4              Is there anything else?

5              MR. WIRSHBA:  Nothing from the government, your Honor.

6              MR. de CASTRO:  Nothing from the defense, your Honor.

7              THE COURT:  Thank you, all.  Good-bye.

8                            *    *    *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25